UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LEROY BROWN,

                             Plaintiff,

    -v-

CITY OF NEW YORK, NEW YORK CITY POLICE
OFFICER GONZALEZ, SHIELD #438, NEW YORK
CITY POLICE OFFICER MATOS, SHIELD #8444,
and NEW YORK CITY POLICE OFFICER
CHAMBERS, SHIELD # 9494,

                            Defendants.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 2 7 2013

11 Civ. 6379 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

    Pro se plaintiff Leroy Brown brings this federal civil rights action against New York City and NYPD officers Gonzalez, Matos, and Chambers. Plaintiff asserts claims of false arrest, unreasonable detention, and unlawful search and seizure, related to an NYPD search of his person on December 30, 2009, which led to his arrest for marijuana possession and his alleged detention for eight days without presentment before a judge.

    Defendants have moved for summary judgment as to all three of plaintiff's claims. For the reasons set forth below, defendants' motion is GRANTED.

1

I.   BACKGROUND

   a. Plaintiff's Arrest

The evidence in the record as regards the chronology of plaintiff's arrest consists of plaintiff's own statements, the arrest report, and a "decline to prosecute" memo produced by the Assistant District Attorney; defendants have not submitted additional declarations or deposition excerpts.

The decline to prosecute memo indicates that on December 30, 2009, a security guard at plaintiff's apartment building at 1962 First Avenue in Manhattan, New York called Officer Gonzalez to report that somebody was inside a hallway smoking drugs. (Decline to Prosecute Memo, Speight Decl. Ex. J at 1.) Undercover officers Matos, Chambers, and Gonzalez responded. (Id.)

At his deposition, plaintiff recognized that "a lot of drugs [were] sold" in his building. (Pl.'s Dep. at 24:13, Speight Decl. Ex. D.) The officers stopped plaintiff and questioned him as he was leaving the building. (Id. at 18:11-23.) They frisked plaintiff and discovered three "roaches" in his jacket pocket, which plaintiff himself and the defendant officers believed to be "marijuana roaches." (Defs.' R. 56.1 Stmt. ("Defs.' 56.1") ¶ 3, ECF No. 58; Pl.'s Dep. at 34:3-4.) Plaintiff did not then dispute that the roaches were marijuana because he "really thought they were marijuana." (Pl.'s Dep. at 34:3-4.)

The roaches tested positive for marijuana in a field test, (Field Test Report, Speight Decl. Ex. F), but the Manhattan District Attorney declined to prosecute the

case, citing the fact that "a subsequent field test indicated that the cigarettes tested negative for marijuana." (Decline to Prosecute Mem. at 1.)

Plaintiff testified that he was "shocked" the second test came up negative for marijuana because he "thought [he] was caught red-handed." (Pl.'s Dep. at 56:18-19.) Following discovery in this matter, plaintiff explained that he hand-rolls both marijuana and tobacco cigarettes; he now believes that the roaches the police recovered actually contained tobacco. (Pl.'s Dep. at 34:8-9; Letter of Leroy Brown to the Court, Sept. 20, 2012, Speight Decl. Ex. H.)

Officer Gonzalez arrested plaintiff at approximately 10:10 p.m on December 30. (Arrest Rept., Speight Decl. Ex. C; Defs.' 56.1 ¶ 1.) The arrest report indicates that defendant-undercover officers Chambers, Gonzalez, and Matos interacted with plaintiff incident to the arrest. (Defs.' 56.1 ¶ 2.)

b. Plaintiff's Detention

The defendant officers took plaintiff to the Twenty-Third Police Precinct, where an officer informed him that a recent prior arrest rendered him ineligible to be released with a Desk Appearance Ticket, as plaintiff had learned was customary. (Pl.'s Dep. at 37:21-38:4.) Plaintiff does not recall whether it was the defendant officers who then transported him to NYPD Central Booking in lower Manhattan (Pl.'s Dep. at 39:8-13), nor does he allege that they were involved in detaining him there.

Plaintiff alleges that he was detained at Central Booking from the time of arrest on December 30, 2009, through January 7, 2010, without being presented to

3

a judge for arraignment. (Pl.'s Dep. at 44:11-13.) Plaintiff raises his New York State Criminal History Report as evidence, noting that it shows the District Attorney declined prosecution on January 6, and not until January 7 did it make an entry in his file listing that his case was "Sealed Upon Termination of Criminal Action in Favor of the Accused." (Criminal History Rept. at 2-3, Pl.'s Br. Ex. 1.)

Defendants, meanwhile, point to an "Arraignment Status" record indicating that plaintiff was released on December 31, 2009, just a day after he was detained. (Arraignment Status Record at 1, Speight Decl. Ex. I.)

There is no evidence in the record to suggest a policy or practice on the part of the NYPD to hold arrestees without judicial process.

    c.    <u>Procedural History</u>

Plaintiff brought this action on August 31, 2011, alleging (1) false arrest, (2) unreasonable detention, and (3) unlawful search and seizure, against the City and the defendant officers.

Defendants moved for summary judgment on November 20, 2012. (ECF No. 56.) Defendants' motion addressed only those allegations related to plaintiff's arrest and subsequent detention. However, upon its review of plaintiff's Complaint and the evidentiary record, the Court construed plaintiff's Complaint to allege that his initial stop-and-frisk by the NYPD violated the Fourth Amendment. The Court directed the parties to brief the unlawful search issue as it related to the pre-arrest conduct of the police. (ECF No. 68.) The motion was fully briefed as of June 10, 2013, the date on which plaintiff submitted his supplemental reply. (ECF No. 72.)

4

## II. STANDARD OF REVIEW

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In making that determination, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732. 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue for trial and cannot rely merely on allegations or denials contained in the pleadings. Fed. RR. Civ. P. 56(c),(e); see also Wright v. Goord. 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 539 F.3d 159, 166 (2d Cir.2010) (citations omitted). Only disputes over material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

In reviewing a motion for summary judgment involving a non-moving, pro se plaintiff, this Court "liberally construe[s] [the] pleadings and briefs submitted by [the] pro se litigant[ ]," "reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quotation marks omitted). However, even pro se plaintiffs must offer some evidence that would defeat a motion for summary judgment. Saldana v. Local 32B–32J Serv. Emps. Int'l Union, No. 03 Civ. 1853, 2005 WL 66895 (S.D.N.Y. Jan. 12, 2005) ("Even a pro se plaintiff [ ] cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint.").

III. ANALYSIS

Defendants argue that, as a matter of law, the City of New York cannot be held liable on any of plaintiff's three causes of action and, further, that plaintiff has not raised triable issues of fact as against the defendant officers. The Court agrees.

A. City of New York

Plaintiff fails to present evidence that policies of the City of New York caused any of the alleged harms – i.e., unlawful search, false arrest, or unlawful imprisonment. As such the City cannot be held liable.

Plaintiff's claims arise under the federal civil rights statute, 42 U.S.C. § 1983, but municipal liability under § 1983 is limited by the doctrine of Monell v. New York city Dept. of Social Svcs., 436 U.S. 658 (1978). Under Monell, a municipality

such as New York City "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) (emphasis in original) (citing Monell, 436 U.S. at 694-95).

Thus, "[i]t is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." City of Springfield, Mass. v. Kibbe, 480 U.S. 257, 267 (1987) (quoting Monell, 436 U.S. at 694) (quotation marks omitted).

Even construing the allegations of plaintiff's complaint liberally and taking all evidentiary inferences in his favor, plaintiff fails to submit any evidence that a policy or practice of the NYPD caused his injuries.

As to the unlawful search, plaintiff submits no evidence—other than a bare assertion—that the City has an official practice of making racially discriminatory stops without reasonable suspicion. However, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks, 539 F.3d at 166. Nor does plaintiff submit evidence of a policy or practice that caused his false arrest.[1] Finally, plaintiff testified that

---

[1] The Court notes that such an analysis has been undertaken by Judge Scheindlin in Floyd v. City of New York et al., No. 08 Civ. 1034 (SAS), 2013 WL 4046209 (S.D.N.Y. Aug. 12, 2013), but the parties and evidence in Floyd are not before this Court, nor can the Court take judicial notice that the policy or practice found in that case is identical to the conduct that occurred here. See Delrosario v. City of New York, 07 CIV. 2027 (RJS), 2010 WL 882990 (S.D.N.Y. Mar. 4, 2010)(" Although this Court can take judicial notice of filings in other courts, it can do so only to acknowledge the existence of the lawsuit or filing, not for the truth of matters asserted in those claims.")(citing Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir.1991); Hickey v. City of New York, No. 01 CIV. 6506 (GEL), 2004 WL 2724079 (S.D.N.Y. Nov. 29, 2004) aff'd, 173 F. App'x 893 (2d Cir. 2006)("The Court cannot, as plaintiffs appear to assume, somehow take judicial notice of a number of highly-publicized episodes of alleged police abuse or brutality, assume without any evidentiary record that these

he found it unusual for the NYPD to leave a detainee at Central Booking without presentment before a judge. (See Pl.'s Dep. at 52:22-25 (noting, as compared to his previous NYPD detention experiences, the length of the detention here "was unusual" and he never "had to go through that before").) This admission itself undermines any policy or practice of unlawful detention by the City.

### B. Defendant Police Officers

As to the defendant officers, plaintiff fails to raise a triable issue that the arresting officers lacked reasonable suspicion to frisk him or probable cause for his arrest. He fails to raise a triable issue that the officers were involved personally in the post-arrest harms. Defendants are thus entitled to summary judgment on all three claims.

#### a. Unlawful Search and Seizure

Plaintiff claims the officers stopped him without "probable cause", which the Court construes liberally to mean they conducted a Terry stop-and-frisk without reasonable suspicion, in violation of his Fourth Amendment rights.

The police may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (U.S. 1989) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). To

---

episodes all involved wrongful police behavior and a failure to investigate or punish such behavior, and extrapolate from those assumptions an effect on the present episode."). The Court is especially reluctant to make any such determination where the uncontested evidence here is that the police were called to plaintiff's building by the security guard's report of criminal activity; the stop-and-frisks in Floyd were not prompted by calls with similar temporal proximity and specificity of location as plaintiff's stop here.

8

ensure the safety of the officers involved, the Fourth Amendment permits an officer conducting such a stop to frisk the stopped individuals for weapons. Terry, 392 U.S. at 26.

An officer's subjective hunch is insufficient to constitute "reasonable suspicion"; rather, the officer must have an objective basis for that suspicion. Sokolow, 490 U.S. at 7. (citing Terry, 392 U.S. at 30.) The objective basis is a de minimus requirement, however; "a minimal level of objective justification for making [a] stop . . . considerably less than preponderance of the evidence" is sufficient. See id.

Here, plaintiff relies solely on his own assertion that the officers had no reason to suspect he was engaged in unlawful activity. Defendants' only evidence in opposition to plaintiff's testimony consists of the arrest record and the ADA's decline to prosecute memo, which asserts that "Police Officer Gonzalez received a call from the security guard at [plaintiff's building] stating that [plaintiff] was smoking drugs in the hallway of the building." (Decline to Prosecute Mem., Speight Decl. Ex. J.)

The uncontested evidence that Officer Gonzalez received a call from the security guard is sufficient to demonstrate no triable issue as to reasonable suspicion. Once the officer had received a report that plaintiff (or somebody of plaintiff's general description) was engaged in criminal activity at the apartment building, the officer possessed reasonable suspicion to conduct a Terry stop-and-

frisk.[2] See, e.g., United States v. Simmons, 560 F.3d 98, 105 (2d Cir. 2009)(noting an "anonymous 911 call reporting an ongoing emergency is entitled to a higher degree of reliability and requires a lesser showing of corroboration than a tip that alleges general criminality."). Plaintiff's Fourth Amendment unlawful search and seizure claim therefore fails.

  b. False Arrest

Plaintiff's false arrest claim[3] is similarly deficient. Once the officers had reasonable suspicion to conduct a lawful stop-and-frisk, the contraband they found in the course of the frisk provided them with sufficient probable cause to arrest plaintiff.

"It is well settled that the existence of probable cause is a complete defense to claims of false arrest . . . under § 1983." D'Olimpio v. Crisafi, 718 F. Supp. 2d 357, 364 (S.D.N.Y. 2010). "Officers have probable cause to arrest when they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999) (citation and quotation marks omitted).

---

[2] Officer Gonzalez's statement would be admissible under the public records exception to the hearsay rule as it was a factual finding made in the course of a legally authorized investigation by the ADA. Fed. R. Evid. 803(8). In addition, the Court finds that the statement has sufficient indicia of trustworthiness – the Assistant District Attorney is an officer of the Court and would not have reason to fabricate the officer's statement in the context of a decline to prosecute memo.

[3] "The common law tort of false arrest is a species of false imprisonment . . . [which] [u]nder New York law [requires]: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (citation and quotation marks omitted).

"A court examines the information available to the officer at the time of the arrest and immediately before it. . . . The fact that charges are later dismissed does not affect whether there was probable cause at the time of arrest. Johnson v. City of Mount Vernon, 2012 WL 4466618, at *4 (S.D.N.Y. Sept. 18, 2012).

Here, the officers searched plaintiff and discovered three "roaches" in plaintiff's jacket pocket. (Pl's Dep. at 33:3.) The officers believed – as did plaintiff himself – that the roaches were marijuana. (Id.) Plaintiff did not dispute that the roaches were marijuana after the officers' discovery because he "really thought they were marijuana." (Id. 34:3-4.) The officers conducted a field test which came back positive for marijuana. They then arrested plaintiff for marijuana possession. The fact that a subsequent test was negative for the drug and the ADA declined to prosecute is irrelevant; the officers had probable cause at the time of the arrest.[4] Plaintiff thus fails to raise a triable issue as to false arrest.

   c. Unreasonable Detention Claim

Finally, as to plaintiff's pretrial detention, he does not raise a triable issue that defendant-officers Matos, Gonzalez, or Chambers were directly involved in his unlawful detention; his claim against them must be dismissed.

In the § 1983 context, plaintiff must demonstrate "defendant's direct involvement in causing the alleged damages." Floyd v. City of New York, 813

---

[4] Even if they lacked probable cause, the officers' good-faith belief that probable cause existed provides them with qualified immunity. See Scott v. City of White Plains, No. 10 Civ. 1887 (KBF), 2013 WL 1313774 (S.D.N.Y. Mar. 18, 2013) (citing Jenkins v. City of New York, 478 F.3d 76-78 (2d Cir.2007)("An arrest is objectively reasonable where there is 'arguable probable cause' – e.g., where probable cause actually existed, or officers of reasonable competence could disagree as to probable cause.").

F.Supp.2d 417, 439 (S.D.N.Y. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)). As such, "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must p[rove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.; see also Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001) ("[I]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.")

Plaintiff does not present any evidence that the defendant officers were in any way involved with his transportation to or detention at Central Booking. Without evidence of their "personal involvement", defendants are entitled to summary judgment on the unreasonable detention claim.

CONCLUSION

In light of the foregoing, defendants' motion for summary judgment is GRANTED and this case is DISMISSED.

The Clerk of the Court is directed to close the motion at ECF No. 56, and to terminate this case.

SO ORDERED.

Dated:   New York, New York
         August 27, 2013

_____
KATHERINE B. FORREST
United States District Judge

CC:
Lerroy Brown
10-R-3988
Watertown Correctional Facility
23147 Swain Road, Dryhill
Watertown, NY 13601
PRO SE